IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

NENA N. HAYNES )
) No. 10-1049
Plaintiff, )

v.

MICHAEL J. ASTRUE,

Defendant.

**OPINION AND ORDER**

**I. INTRODUCTION**

Plaintiff brings this action pursuant to the Social Security Act (the "Act"), 42 U.S.C. § 405(g). She seeks judicial review of the final decision of the Commissioner of Social Security that denied her application for disability benefits. The matter is before the Court on cross-motions for summary judgment. Although the ALJ's opinion is thorough and well-reasoned, it is unclear whether he considered certain evidence, as discussed below. For the following reasons, Plaintiff's Motion will be granted, and Defendant's denied, solely to the extent that this matter will be remanded for the limited purpose of clarification.

**II. PROCEDURAL HISTORY**

Plaintiff filed for SSI on September 26, 2006. She alleged disability based on depression, learning disability, diabetes mellitus, and asthma. The claim was denied on February 8, 2007. Plaintiff requested and received a hearing on April 10, 2007; the hearing was held on July 10, 2008. Upon hearing, by decision dated September 19, 2008, the ALJ determined that Plaintiff was not disabled. The Appeals Council denied Plaintiff's subsequent request for review.

Plaintiff then filed this appeal. Plaintiff contends that the Commissioner's decision is not supported by substantial evidence, and should be reversed. Defendant contends the contrary. Presently, the parties have filed cross-motions for summary judgment.

### III. STANDARD OF REVIEW

Judicial review of the Commissioner's final decisions on disability claims is provided by statute. 42 U.S.C. §§ 405(g) 6 and 1383(c)(3) 7. Section 405(g) permits a district court to review the transcripts and records upon which a determination of the Commissioner is based, and the court will review the record as a whole. See 5 U.S.C. §706. When reviewing a decision, the district court's role is limited to determining whether the record contains substantial evidence to support an ALJ's findings of fact. Burns v. Barnhart, 312 F.3d 113, 118 (3d Cir. 2002).

Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate" to support a conclusion. Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995) (quoting Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)). If the ALJ's findings of fact are supported by substantial evidence, they are conclusive. 42 U.S.C. § 405(g); Richardson, 402 U.S. at 390. A district court cannot conduct a de novo review of the Commissioner's decision, or re-weigh the evidence of record; the court can only judge the propriety of the decision with reference to the grounds invoked by the Commissioner when the decision was rendered. Palmer v. Apfel, 995 F.Supp. 549, 552 (E.D. Pa. 1998); S.E.C. v. Chenery Corp., 332 U.S. 194, 196 - 97, 67 S. Ct. 1575, 91 L. Ed. 1995 (1947). If the ALJ's findings of fact are supported by substantial evidence, such findings are binding. Knepp v. Apfel, 204 F.3d 78, 83 (3d Cir. 2000).

While the ALJ need not discuss every piece of evidence in the record, he must provide at least a glimpse into his reasoning. Zurawski, 245 F.3d at 889. "Even if enough evidence exists in

the record to support the decision, [the court] cannot uphold it if 'the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result.'" Hodes v. Apfel, 61 F. Supp. 2d 798, 806 (N.D. Ill. 1999) (quoting Sarchet v. Chater, 78 F.3d 305, 307 (1996)).

**IV. DISCUSSION**

To be eligible for social security benefits under the Act, a claimant must demonstrate that he cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. §423(d)(1)(A); Brewster v. Heckler, 786 F.2d 581, 583 (3d Cir. 1986). The ALJ must utilize a five-step sequential analysis when evaluating whether a claimant has met the requirements for disability 20 C.F.R. §§ 404.1520, 416.920.

The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or a combination of impairments that is severe; (3) whether the medical evidence of the claimant's impairment or combination of impairments meets or equals the criteria listed in 20 C.F.R., Pt. 404, Subpt. P, Appx. 1; (4) whether the claimant's impairments prevent him from performing his past relevant work; and (5) if the claimant is incapable of performing his past relevant work, whether he can perform any other work which exists in the national economy. 20 C.F.R. §404.1520(a)(4); see Barnhart v. Thomas, 540 U.S. 20, 24-25, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003). If the claimant is determined to be unable to resume previous employment, the burden shifts to the Commissioner to prove that, given claimant's mental or physical limitations, age, education, and

work experience, he or she is able to perform substantial gainful activity in jobs available in the national economy. Doak v. Heckler, 790 F.2d 26, 28 (3d Cir. 1986).

In this appeal, Plaintiff's focus rests on issues surrounding her mental health, rather than her physical condition.[1] Pertinent here, Plaintiff argues that the ALJ improperly discounted the opinion offered by Ms. Sharo, a certified nurse practitioner at Sharon Regional Health System. In August of 2007, Ms. Sharo completed a Medical Assessment of Ability to Perform Work-Related Activities. She opined, inter alia, that Plaintiff had impulse control disorder, mild mental retardation, and difficulty carrying out instructions. As Plaintiff concedes, Ms. Sharo is not an "acceptable medical source" according to applicable regulations. Pursuant to 20 C.F.R. § 404.1513, however, such sources may be important:

> [Medical sources such as nurse practitioners] are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file. . … in some circumstances, the opinion of a medical source who is not an "acceptable medical source" may outweigh even the opinion of a treating source, particularly where the "non-acceptable" medical source has seen the claimant more often than the treating source and has provided better supporting evidence and a better explanation for his or her opinion.

The ALJ proffered several explanations for rejecting Ms. Sharo's findings, which were offered between May and December of 2007. In particular, the ALJ discredited Ms. Sharo's findings because they were not supported by contemporaneous progress notes from Dr. Liszewski, which did not contain any complaints or observations of abnormal mental health symptoms. As the ALJ notes, however, after a brief hospitalization for cutting herself, Plaintiff entered Dr. Liszewski's care for her "physical conditions," and went to Sharon Regional Health System for her psychiatric issues. Accordingly, there is no reason to expect Dr. Liszewski to address Plaintiff's mental health issues; their absence from his records does not necessarily

---

[1] To the extent that Plaintiff intends to suggest that the ALJ erred in his evaluation of her physical ailments, I find no error, and that the ALJ's conclusions were supported by substantial evidence.

create an inconsistency or contradiction. The same is true for the records of Plaintiff's gynecologist, which did not report Plaintiff's mental health problems; the ALJ also relied on this absence. Moreover, it appears that Ms. Sharo was one of the few people who had a regular mental health treatment relationship with Plaintiff during the pertinent time period.

In addition, the ALJ did not explain his conclusions in the context of the overall picture of Plaintiff's mental condition, and the potential for its variability over time. For example, he discredits Ms. Sharo's opinion as inconsistent with her own progress notes, which reflect, in the words of the ALJ, "generally good response to medications" and "generally essentially normal mental status findings." Although Ms. Sharo's records do reflect several intermittent, positive outcomes and treatment, they also variously note intermittent setbacks, such as rises in irritability, anxiety, and isolation, a mostly depressed mood, daily angry outbursts, and several adjustments to medication. "[D]ifferent findings by a physician examining a patient on different dates are not necessarily contradictory. They may merely reflect differences in the patient's condition on the respective dates." Chamberlin v. Schweiker, 1983 U.S. Dist. LEXIS 15872, at *3 (S.D.N.Y. June 29, 1983). Moreover, temporary relief of mental illness symptoms, or isolated instances of improvement, cannot be used to discredit a treating physician's opinion. Ruiz v. Apfel, 98 F. Supp. 2d 200, 208 (D. Conn. 1999).

Similarly, the ALJ rejected Ms. Sharo's assignment of a global assessment functioning score ("GAF") of 22 on March of 2007, when Plaintiff was initially hospitalized for self-harm. Previously, Dr. Stephen Lee treated Plaintiff from 2005 into August 8, 2006, and provided a GAF of 45. The ALJ properly rejected the GAF of 45 as unsupported by medically acceptable clinical evidence, as Dr. Lee's most recent progress notes did not reflect impairment, and as inconsistent with the other substantial evidence. Similarly, the ALJ gives great weight to

Plaintiff's GAF of 68 a stated in May of 2007. A GAF is not immutable, however, as suggested by Ms. Sharo's stated goal that Plaintiff "return to highest GAF." Hickey v. Astrue, 2010 U.S. Dist. LEXIS 103661, at *10 (N.D. Tex. Aug. 2, 2010). Again, in an abundance of caution, the ALJ should clarify whether he considered the possibility of persistent unpredictability or fluctuation in Plaintiff's condition, and how that might affect his conclusions.

Moreover, the ALJ relied on positive statements in Plaintiff's school records -- such that she was a "good worker, did "quality work," was "always prepared for class," and tested in the average range on an IQ test. He also rejected Ms. Sharo's note that Plaintiff has "mild MR [mental retardation]-trouble following instructions" as inconsistent with Plaintiff's full-scale IQ score of 97.[2] In so doing, the ALJ noted that school records do not document that Plaintiff had any trouble carrying out instructions. The ALJ did not, however, address several portions of those records that may be seen as consistent with Ms. Sharo's opinion. For example, in the same 2006 records relied on by the ALJ, Plaintiff's school performance was classified as Intellectually Deficient, and she was deemed to "need" "clear and concise directions" that are "very descriptive and thorough."[3] Modifications to be provided to her educational program included that tasks be broken down into smaller segments, and the number of directions limited, and that directions be reviewed to check for understanding.  the ALJ "must consider all evidence and give some reason for discounting the evidence [the ALJ] rejects." Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999). "The ALJ is required…to address and reconcile

---

[2] The ALJ also interpreted Ms. Sharo's statement as asserting that Plaintiff's mild MR caused difficulty with instructions; because of an average IQ test result, and thus no MR, the ALJ rejected the instructional difficulty. Ms. Sharo, however, did not specify that causal link.

[3] It appears as though the limitations discussed in the ALJ's residual functional capacity discussion account for such issues, but they are not specifically referenced.

medical evidence that would support a contrary conclusion." Smith v. Comm'r of Soc. Sec., 2010 U.S. Dist. LEXIS 110041, 5-6 (D.N.J. Oct. 15, 2010).[4]

The ALJ has discretion to "evaluate the credibility of a claimant and . . . arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged. . . ." Brown v. Schweiker, 562 F. Supp. 284, 287 (E.D. Pa. 1983). "When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements." Williams v. Barnhart, 211 Fed. Appx. 101, 104-105 (3d Cir. Pa. 2006). Several of the ALJ's credibility determinations appeared to rest, in part, on the reduced weight given other evidence, as previously discussed. Thus, to the extent that the remand proceeding requires him to reassess Plaintiff's credibility, that reassessment should occur.

## CONCLUSION

In sum, it is unclear, from the ALJ's otherwise thorough and well-reasoned decision, whether he considered the specified portions of the record regarding Plaintiff's mental health status and ability. "An immediate award of benefits is appropriate only when the evidentiary record has been fully developed, and when the evidence as a whole clearly points in favor of a finding that the claimant is statutorily disabled." LaSalle v. Comm'r of Soc. Sec., 2011 U.S. Dist. LEXIS 40545, at *19 (W.D. Pa. Apr. 14, 2011). This is emphatically not the case here, and I neither weigh the evidence nor find that Plaintiff is disabled. Instead, it is appropriate to remand this case for the ALJ for the limited purpose of clarifying whether and how he considered the mental health evidence discussed supra, and, if he did not, the remand shall include consideration of such evidence.

---

[4] Although Plaintiff's school records may not be medical evidence, the ALJ relied on certain portions of those records in support of his determination.

An appropriate Order follows.

**ORDER**

AND NOW, this 26th day of May, 2011, it is hereby ORDERED, ADJUDGED, and DECREED that the parties' Motions for Summary Judgment (docket nos. 8 and 10) are DENIED without prejudice, and this matter is remanded to the ALJ for further proceedings, as more specifically stated in the body of the Opinion.

BY THE COURT:

/s/Donetta W. Ambrose

Donetta W. Ambrose

Senior Judge, U.S. District Court